Eduardo H. Coronado, SBN 022397
**CORONADO LAW FIRM, P.L.L.C.**
4700 W. White Mountain Boulevard
Lakeside, Arizona  85929
Telephone:     (928) 532-4529
Fax :             (928) 532-0753
Email:        eduardocoronado@frontier.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA

| | |
|---|---|
| **GRADY HILLIS, GRADY HILLIS REALTY, and GLH PROPERTY INVESTMENTS LLC,**<br><br>             **Plaintiffs,**<br>**vs.**<br><br>**NATIONAL ASSOCIATION OF REALTORS, ARIZONA ASSOCIATION OF REALTORS, ARIZONA REALTORS; WHITE MOUNTAIN ASSOCIATION OF REALTORS; JOHN DOES I-V; JANE DOES I-V; ABC CORPORATIONS I-V; and XYZ PARTNERSHIPS I-V,**<br><br>             **Defendants.** | **CASE NO.: 3:21-cv-08194-SPL**<br><br>**SECOND AMENDED COMPLAINT AND JURY DEMAND** |

1. Plaintiffs, **GRADY HILLIS, GRADY HILLIS REALTY, and GLH PROPERTY INVESTMENTS LLC**, (hereinafter "Plaintiffs"), by and through their undersigned counsel, for their Complaint, answer and allege as follows:

### PARTIES, JURISDICTION AND VENUE

2. Plaintiff,  Grady Hillis, is a resident of Lakeside, (Navajo County), Arizona and a licensed  real  estate  broker  and  investor  in  Arizona  conducting  a  real  estate

1

1    brokerage investment business primarily in Navajo, Apache and occasionally,

2    Maricopa County, Arizona and has been licensed as a real estate agent or broker

3    in Arizona for approximately 24years.  This Plaintiff was damaged by the actions

4    of the Defendant(s) both as a real estate broker and as an investor, seller and

5    buyer employing other real estate brokers and agents for their services.  These

6    services were damaged, hindered or infringed upon by the actions of the

7    Defendant(s) causing damage to the Plaintiff(s).

8    3.  Plaintiff,  Grady Hillis Realty, is Plaintiff, Grady Hillis' real estate brokerage,

9    licensed in Arizona conducting a real estate brokerage and investment business

10    primarily in Navajo, Apache and occasionally, Maricopa County, Arizona for over

11    11 years.  These services were hindered or infringed upon by the actions of the

12    Defendant(s) causing damage to the Plaintiff(s).

13    4.  Plaintiff,  GLH Property Investments LLC is Plaintiff, Grady Hillis' real estate

14    investment company formed as an Limited Liability Company in Arizona.

15    Plaintiff, Grady Hillis, is the sole owner and managing member of this LLC. The

16    actions of the Plaintiff(s) were damaged, hindered or infringed upon by the

17    actions of the Defendant(s) causing damage to the Plaintiff(s).

18    5.  Defendants, NATIONAL ASSOCIATION OF REALTORS (hereinafter NAR) "is a

19    trade association organized under the laws of Illinois with its principal place of

20    business in Chicago. It is the leading national trade association of real estate

21    brokers and agents.  Among its members are licensed residential real estate

22    brokers (and agents) (Emphasis added), including brokers who provide real

23    estate brokerage services to home sellers ('listing brokers"), home buyers

24    ("buyer brokers"), or both (collectively "residential brokers"). It includes its

1    successors and assigns, and its subsidiaries, divisions, groups, affiliates,

2    partnerships, and joint ventures, and their directors, officers, managers, agents,

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1        and employees .[1]  It is the parent company that controls all or most of the

2        actions of the Arizona Association of Realtors (hereinafter AAR)[2] .

3                      ————————————————

4   On July 1, 2021 the United States Department of Justice (DOJ) filed a Notice of Withdrawl of Consent to Entry of Proposed Final Judgment and a Notice of Consent to Entry of Proposed Final Judgment. This is the definition the DOJ

5   used to describe NAR in its case against NAR filed in the United States District Court for the District of Columbia on November 19, 2020 Case number 1:20-cv-3356 for antitrust violations that "collectively unreasonably restrain trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 and should be enjoined."

6   The DOJ further alleged that NAR "has adopted a series of rules, policies and practices governing, among other things,

7   the publication and marketing of real estate, real estate broker commissions, as well as real estate broker access to lockboxes, that have been widely adopted by NAR's members resulting in a lessening of competition among real estate brokers to the detriment of American home buyers.  These NAR rules, policies and practices

8   include:…prohibiting NAR-affiliated multiple-listing services ("MLSs") from disclosing to prospective buyers the amount of commission that the buyer broker will earn…allowing buyer brokers to **MISREPRESENT** (emphasis added) that a buyers broker's services are free…..and limiting access to the lockboxes that provide licensed brokers

9   with physical access to a home that is for sale to only brokers who are members of a NAR-affiliated MLS."
  (Note: In Arizona this also includes the real estate agents that work as independent contractors for brokers and are paid by brokers.)

10   The depth of the reach of NAR's infringement was described on page 3 paragraph 7 of the DOJ's complaint which states "…NAR establishes and enforces rules, polices and practices that are adopted by NAR's 1400+ local

11   associations (also called "Member Boards") and their affiliated MLSs that govern the conduct of NAR's approximately 1.4 million-member REALTORS® who are engaged in residential real estate brokerages across the United States."

12   The DOJ illustrates how NAR controls its Member Boards (and the brokers and agents that are associated with the Member Board) by citing the NAR Code of Ethics on page 3 paragraph 7 of the complaint which states "(a)ny Member

13   Board which shall neglect or refuse to maintain and enforce the Code of Ethics with respect to the business activities of its members may, after due notice and opportunity for hearing, be expelled by the Board of Directors from

14   membership in the National Association." (Citation omitted).
  Filed with the complaint on the same day was a 16 page Proposed Final Judgment that listed numerous meausures that NAR would be ordered to take to remedy the alleged Antitrust violations as well as a 3 page United States

15   Explanation of Consent Decree Procedures under page 2 paragraph 5 the DOJ reserved the right to withdraw the Proposed Final Judgment.

16   On December 10, 2020 the DOJ filed a 22 page Competitive Impact Statement that parroted much of the information from the previous pleadings.

17   On July 1, 2021 the DOJ filed a Notice of Withdrawl of Proposed Final Judgment and a Notice of Voluntary Dismissal. In these two short documents the DOJ stated "After filing the Complaint and proposed Final Judgment, the United

18   States sought Defendant's consent to amend the Reservation of Rights provision in Section XI of the proposed Final Judgment to eliminate any potential limitiation of the future ability of the United States to investigate and challenge additional potential antitrust violations committed by Defendant.  Defendant declined to consent.  As a result, the

19   United States has chosen to exercise its right under Paragraph 2 of the Sipulation and order to withdraw its consent to entry of the proposed Final Judgment." In the Notice of Voluntary Dismissal, the DOJ asked the Court to dismiss the matter without prejudice.

20   On the same day, the DOJ issued a statement which stated, among other things, "(t)he department determined that the settlement will not adequately protect the department's rights to investigate other conduct by NAR that could impact

21   competition on the real estate market and may harm home sellers and home buyers.  The department is taking this action to permit a broader investigation of NAR's rules and conduct to proceed without restriction."

22   It appears that a Texas based real estate brokerage also filed suit recently in the Seattle District Court against NAR alleging antitrust violations. The merits of this case are not known and may be determined during discovery.

23   [2]The 2019 Bylaws of NAR is a 20 page document.  Article 1 Section 1 refers to local boards being referred to as Member Boards.  The Member Boards relevant in this case are AAR and AR's grievance committee both described

24   above.  WMAR is described in paragraph 8 and is a member board that is subordinate to AAR and, therefore, subordinate to NAR.  See also Article IV Section 1 of the NAR Code of Ethics which requires all Member Boards to adopt the NAR Code of Ethics.The 2018 AAR Bylaws, Policies and Official Statements states in part:.  Article XIII

6. Defendants, AAR is a trade association held as a non-profit corporation that is a subsidiary or division of NAR with its headquarters in Phoenix, Arizona, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

7. Defendants, WHITE MOUNTAIN ASSOCIATION OF REALTORS (hereinafter WMAR) is a trade association that is a subsidiary or division of NAR and AAR with its headquarters in Lakeside, Arizona, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

8. Jurisdiction is conferred onto this Court under 28 U.S.C. §§ 1331. Jurisdiction over the state law claims is conferred by 28 U.S.C. §§ 1367. Venue is proper in this District.

## **RELEVANT HISTORY**

9. For nearly two decades the Defendants have infringed on the rights and duties of the Plaintiff(s) as a real estate broker, real estate investor and client of the Defendant(s).

10. In approximately 2005, Defendant, WMAR, began redacting personal contact iinformation out of Plaintiff's sales listings when an emailed copy was sent to a

_____

of this 24 page document states that AAR may discipline members for violating the code of ethics. The 2020 WMAR Bylaws and (sic) Rules and Regulations state in part and include. Article VI Section 2 of this 17 page document states in part: "Any member of the Association may be reprimanded, fined, place (sic) on probation, suspended, or expelled by the Board of Directors for a violation of these Bylaws and (sic) Association Rules and Regulations...".

potential buyer.  This also occurs with all other listings dessemenated by other brokers and agents who are members of WMAR.  There is no way for a broker or agent to override this.  The primary information redacted is the agent and or broker information.  This makes all listings appear to be the broker or agents listing that sends it and tends to reduce competition and infringes on advertising by making it difficult for the potential buyer to obtain the listing broker's contact information.  This practice has occurred for at least the past 17 years.

11. WMAR and AAR have adopted rules and fines that do not allow for the disclosure of personal broker or agent information in the public remarks of listings including, but not limited to, names, phone numbers, social media accounts.  In practice, this also includes information a broker or agent has about their financial interest in a property.  Further, these rules limit engaging in transactions to only brokers and agents who are members of the MLS instead of all brokers and agents licensed in Arizona. These rules even prohibit an owner/seller of their home from placing their own for sale sign on their property.  This chills competition, restricts the ability of an agent or broker to get new buyers or sellers and misrepresents to potential buyers an agent or broker's financial interest.   There are extreme sanctions for failing to follow these rules (including a $15,000.00 fine and/or expulsion) and, ultimately, it is referred to AAR to impose the discipline.[3]

--------------------------

[3] The WMAR Rules and Regulations of the Multiple Listing Service (hereinafter MLS Rules) is a 37 page document. The first 24 pages focuses on advertising rules and the next 3 pages focus on lockboxes.  The first 27 pages is what is most relevant to this complaint and should be read in its entirety.  Section 1.1 says "(WMAR) shall maintain for the use of its Members a Multiple Listing Service ("MLS"…) which shall be subject to the Bylaws of the Association and such Rules and Regulations ("Rules") as may be hereinafter adopted." Of most importance here is Section 2.22 which states: **"Public Remarks Information.**  Information in the Public Remarks field shall be limited to information describing or marketing the listed property.  Field (sic) shall not include information about the listing agent or brokerage, including, but not limited to: names, phone numbers, websites, social media accounts, or any other means of directing  a prospective buyer to the listing agent or office…If violated, fines per the Rate & Fee Schedule are

12. The Defendants AAR and WMAR require the use of their approved lockbox on homes (Supra) that are for sale to be used to access the keys for homes. AAR and WMAR limit who can use the lockboxes to only members of WMAR.  This eliminates the ability for the rest of the brokers and agents in Arizona from having easy access to homes that are for sale. This reduces the exposure and accessibility of the home and the likelihood of the broker or agent being able to sell the home on behalf of the seller.[4]

---

applicable. (Amended 05/2015)". Further, Section 2.35 states "[t]he MLS shall have the authority to remove from the MLS system, any listing violations as defined in Article II."  Section 5.1 does not allow brokers or agents to distribute listings to all other brokers or agents that are licensed in Airzona.  It limits the listings to only members of WMAR and states "**Section 5.1 Information for Participants Only.** Any listing filed with the Service shall not be made available to any broker or firm not a Member of the MLS without the prior consent of the listing broker".  Section 5.2 resticts the ability of the client/seller to place their own for sale sign on their home and states: "**Section 5.2 "For Sale" signs.**  Only the "For Sale" signs of the listing broker may be placed on a property."  The restrictions continue in Section 6.6 which states: "**Section 6.6 Compensation From Participating Brokers Only.**  Compensation may only be offered by Broker Members of the WMAR MLS.  Any source of compensation, other than from a Broker Member, is strictly prohibited.  Any offer of compensation, other than that approved, shall result in immediate removal of the listing from the Service and the Participant shall be assessed a fine per the Rate & Fee Schedule.  (Adopted 07/16)".  The penalties for violating these rules are severe.   Section 8.1 states: "**Section 8.1 Authority to Impose Discipline….**The MLS, may, through the administrative and hearing procedures established in these rules, impose disciplne for violations of the rules and other MLS governance provisions.  Discipline that may be impsed may only consist of one or more of the following:
a.  Letter of warning;
b.  Letter of reprimand;
c.  Attendance at MLS orientation or other appropriate courses or semenars…
d.  Appropriate, reasonable fine not to exceed $15,000;
e.  Suspension of MLS rights, privileges, and services for not less than thirty (30) days nor more than (1) year;
f.  Termination of MLS rights, privileges, and services with no right to reapply for a specified period not to exceed three (3) years.  (Adopted 07/16)". (The note under this section also includes probation for up to a year).

Section 10.2 states: "**Section 10.2 Complaints of Unethical Conduct.**  All complaints of unethical conduct shall be directed to (AAR) for appropriate action in accordance with the Professional Standards Procedures established in the Association's Bylaws.  (Amended 05/08)".

[4] The MLS Rules in Section 16.0 state: "**Section 16.0 Authority.** The (MLS) shall maintain for the use of its Members a common, MLS-approved Keysafe system which shall be operated and/or endorsed by (WMAR) subject to the bylaws of (WMAR)…MLS-approved keysafes shall be governed by the following:
   (a)  (WMAR) requires placement of an MLS-approved keysafe on listed properties if any device giving access to real estate professionals…is authorized by the seller and occupant and is placed on the property.
   (b)  (WMAR) MLS-approved keysafes and devices must receive MLS approval in advance of placement or use on listed properties.
   (c)  …..

13. More recently, Defendant AAR through an AAR ethics hearing panel attempted to sanction the Plaintiff, Grady Hillis.l.  The Plaintiff, Grady Hillis, did not even represent the party that brought the action before the panel and Grady Hillis' client filed no grievance with this panel.  The panel even tried to dictate the contractual forms and terms used in this transaction and coerce Plaintiff, Grady Hillis into using these forms and terms in future. transactions. AAR attempted to sanction the Plaintiff Grady Hillis, with a $1000.00 fine and a $300.00 administrative fee for the hearing despite the fact that AAR is not licensed to practice real estate in Arizona and has no legal authority over Plaintiffs. Plaintiff, Grady Hillis, appealed this decision and another hearing occurred on December 21, 2021.  This matter was finally dismissed after this proceeding

_____

(d)  (WMAR) may revoke the approval of any MLS-approved keysafe or device and/or subject the Participant to discipline if the keysafe or device is used in a manner that fails to continue to satisfy these requirements.
(e)  Fines per the Rate & Fee Schedule, per listing, will be assessed for violation of Keysafe System Rules.  Each Firm/Brokerage will be granted one warning before fine(s) are assessed for subsequent violations."

Section 16.3 states: **Section 16.3 Programer Devices and Keysafes.** …The Supra Keysafe and Programer Key System shall be the Keysafe system authorized for use by members of (WMAR)."

Section 16.4 states: **Section 16.4 Responsibilities.** …Any time a fine is issued to a keyholder…[i]f the keyholder has not paid the fine within ten (10) days of notice, the programmer device shall be deactivated until the fine is paid in full.
(a)  The MLS Member…shall sign a written agreement between Supra and the keyholder stipulating the responsibilities and liabilities of the parties to the agreement.  Any breach of this agreement shall be considered a violation of these rules and regulations."

Section 16.6 states: **Section 16.6 Sharing of Programmer Keys/Devices or Codes.**  The use of a programmer device by any person other than the registered keyholder is expressly prohibited…Violations of this section shall result in a fine to the registered keyholder per the Rate and Fee Schedule, level two fine (currently $500)."

8

14. The Plaintiffs may seek injunctive relief in the near future due to the Defendants having no right to interfere with the contractual relatioships between the Plaintiffs and their clients.

## RELEVANT LAW

### SUBJECT MATTER JURISDICTION

15. In Louisville & N.R. Co. v. Mottley 211 U.S. 149 (1908) the United States Supreme Court ruled on an appeal from the Circuit Court regarding subject matter jurisdiction.  The case was filed in Federal Court with no Constitutional cause of action raised but it was likely going to be raised as a defense.  There was no diversity of citizenship but neither party questioned jurisdiction. The Circuit Court ruled in favor of the Plaintiffs and the Defendants appealed. (Mottley at 151).

16. The high Court refused to address the issues in the case because the lower Court, and even The United States Supreme Court, lacked jurisdiction.  The high Court stated:

"We do not deem it necessary, however, to consider either of these questions, because it is our opinion, the court below was without jurisdiction of the cause…it is the duty of this court to see to it that the jurisdiction of the circuit court, which is defined and limited by statute is not exceeded.  This duty we have frequently performed on our own motion." (Mottley at 152).

17. In layman's terms, this means that even the highest Court in our county could not rule on the matter(s) before the Court even if one party (or the other) was wrong because it lacked jurisdiction..

18. The United States Supreme Court reversed the judgment for the Plaintiff and remanded the case back to the Circuit Court to be dismissed for lack of

9

1        jurisdiction.  (Mottley at 154).  If the highest Court in our country must stand down

2        when there is no subject matter jurisdiction, certainly the Defendants in this case

3        must do the same under these circumstances.

4     19. Under Arizona law, it is clear that the Arizona Department of Real Estate has

5        jurisdiction over real estate brokers and agents.  A.R.S. 32-2102 states:

6 "This chapter (real estate) (emphasis added) shall be administered by the state real estate

7 department under the direction of the real estate commissioner.  The purpose of the

8 department in administering this chapter is to protect the public interest through licensure

9 and regulation of the real estate profession in this state."

10     20. Further, A.R.S 32-2107(A) states:

11 "The commissioner shall have charge of the department with power to administer it in

12 accordance with the provisions of and to carry out the purposes of this chapter."

13     21. Lastly, A.R.S. 32-2108(A) states:

14 "The commissioner…shall, investigate the actions of any natural person or entity engaged

15 in the business or acting in the capacity of a broker (or) salesperson."

16     22. None of the Defendants have been given any power by the state legislature or the

17        real estate commissioner to oversee any real estate matters.  Thus, they have no

18        power to do so under any circumstance.

## ANTITRUST LAWS

20     23. The Defendant's continued actions violate Arizona state antitrust laws. A.R.S. 44-

21        1402 states:

22 "A contract, combination or conspiracy between two or more persons in restraint of , or to

23 monopolize, trade or commerce, any part which is within this state is unlawful."

24     24. A.R.S. 44-1403 further states:

"The establishment, maintenance or use of a monopoly or an attempt to establish a monopoly of trade or commerce, any part of which is within this state, by any person for the purpose of excluding competion or controlling, fixing or maintaining prices is unlawful."

25. The Defendant's actions also violate federal antitrust laws including the Sherman Act.  15 U.S. Code § 1 states:

"Every contract, …, or conspiracy in the restraint of trade or commerce among the several states, or with foreign nations, is declared illegal.  Every person who shall make any contract or engage in any combination conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine, not exceeding $100,000,000 if a corporation or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years or by both said punishments in the discretion of the court."

26. 15 U.S. Code § 15(a) further states:

"…[A]ny person who shall be injured in his business or property by any reason of anything forbidden in the antitrust laws may sue therefor in any district court…and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.  The court may award…simple interest on actual damages for the period beginning on the date of service".

27. Here, the Defendants restricted commerce and excluded competition by unlawfully and systematically redacting and excluding and interfering with information in the Plaintiff's advertisements and limiting access to Plaintiff's lockboxes on the homes the Plaintiffs had for sale.  As such, Defendants are liable for treble damages under this cause of action.

**FACTUAL ALLEGATIONS**

**COUNT 1**

**BREACH OF CONTRACT**

28. Plaintiffs re-allege the allegations contained in Paragraphs 1 through 27 of Plaintiff's Second Amended Complaint.

29. Plaintiffs entered into a contract with Defendants on or about January 1, 1999 where Plaintiffs paid Defendants to provide advertising through an MLS service and access to homes through lockboxes to enhance Plaintiffs business as a real estate agent, broker or investor.

30. Despite anything written to the contrary, all Defendants were aware that Plaintiff(s) must comply with the Arizona Department of Real Estate Rules (hereinafter ADRE Rules) including the rules that the broker (in this case the Plaintiff, Grady Hillis) supervises **all advertising** and that the Arizona Department of Real Estate (hereinafter ADRE) has exclusive jurisdiction over real estate matters and discipline related to real estate agents and brokers.

31. On September 8, 2015, Defendants breached their duty when Defendant WMAR's Attorney, Dax R. Watson, on behalf of WMAR sent Plaintiff, Grady Hillis, a letter attempting to infringe on the duties the Plaintiff, Grady Hillis, has to supervise all advertising pursuant to Arizona Administrative Code R4-28-502(G) and the Plaintiff, Grady Hillis' duties to "ensure that all advertising contains accurate claims and repesentations, and **fully states** (emphasis added) factual material relating to the information advertised. A salesperson or that a broker shall not misrepresent the facts or create misleading impressions." pursuant to Arizona Administrative Code R4-24-502(C).

**32.** As a result of this breach, Plaintiff, Grady Hillis paid an additional $5,142.00 to another brokerage October 15, 2015.

### COUNT 2

### BREACH OF CONTRACT

33. Plaintiffs re-allege the allegations contained in Paragraphs 1 through 32 of Plaintiff's Second Amended Complaint Complaint.

**34.** On September 8, 2015 through the present, Defendant NAR, AAR and WMAR breached their duty when these Defendants created, adopted and enforced a Code of Ethics, bylaws, rules, reguations and procedures (collectively referre to as rules) without any authority to do so. Further, these rules were ati-competitive and violated federal and state law and admistrative code. As a result, Plaintiffs were damaged.

**35.** NAR has acted, and continues to act, as the supervising agency for AAR and WMAR and therefore, NAR is thereby responsible for AAR'S and WMAR'S actions.

### COUNT 3 through 117

### BREACH OF CONTRACT

36. Plaintiffs re-allege the allegations contained in Paragraphs 1 through 35 of Plaintiff's Second Amended Complaint.

37. On September 8, 2015 through the present, Defendant WMAR breached their duty when WMAR redacted information out of at least 114 of Plaintiffs listings in MLS, causing Plaintiffs to lose potential buyers causing a loss of income and infringing on the duties the Plaintiff Grady Hillis and Grady Hillis Realty have to supervise all advertising pursuant to Arizona Administrative Code R4-28-502(G).

### Counts 118 through 227

### BREACH OF CONTRACT

38. Plaintiffs re-allege the allegations contained in Paragraphs 1 through 37 of Plaintiff's Second Amended Complaint.

39. On September 8, 2015 through the present, Defendants breached their duty when Defendants, through the Supra lockboxes excluded access to the home listed by or for all of the Plaintiffs at least 109 times to only WMAR members and not all real estate brokers and agents licensed in Arizona, causing Plaintiffs to lose potential buyers causing a loss of income and infringing on the duties the Plaintiffs Grady Hillis and Grady Hillis Realty have to supervise all advertising pursuant to Arizona Administrative Code R4-28-502(G) and the duties to their client and limiting the access by potential buyers to Plaintiffs properties.

**COUNTS 228-301**

**BREACH OF CONTRACT**

40. Plaintiffs re-allege the allegations contained in Paragraphs 1 through 39 of Plaintiff's Second Amended Complaint.

**41.** On September 8, 2015 through the present, Defendant WMAR breached this duty when WMAR would not allow information about the Plaintiff's financial interest to be disclosed in listing at least 74 times, placing Plaintiff's, Grady Hillis and Grady hillis Realty's real estate brokerage license at risk and infringing on the duties the Plaintiffs, Grady Hillis and Grady Hillis Realty have to supervise all advertising pursuant to Arizona Administrative Code R4-28-502(G); the duties Plaintiffs has to "ensure that all advertising contains accurate claims and repesentations, and **<u>fully states</u>** (emphasis added) factual material relating to the information advertised. A salesperson or broker shall not misrepresent the facts or create misleading impressions." pursuant to Arizona Administrative Code R4-24-502(C)

and a salesperson or broker's duties to disclose a financial interest in a property pursuant to Arizona Administrative Code R4-24-502(B).[5]

**COUNTS 302-384**

**ANTITRUST LAWS**

---

[5] Although Arizona Administrative Code R4-24-502(B) refers to placing the words "owner/agent" in the advertisement this terminology would have misrepresented the truth because the Plaintiff and one of his agents, Kelley Tucker, only had a financial interest in the property and were going to receive a portion of the proceeds from the sale. This was necessary disclosure when Arizona Administrative Code R4-24-502(B), (C), (E), and (G) are read in their entirety.

The appropriate disclosure was used by Plaintiff, Grady Hillis, approximately a decade before MLS Rule Section 2.22 was enforced. (See private versions of MLS numbers 112032, 112714, and 115026 collectively attached as Exhibit 21). MLS rule Section 2.22 states: **"Public Remarks Information.** Information in the Public Remarks field shall be limited to information describing or marketing the listed property. Field (sic) shall not include information about the listing agent or brokerage, including, but not limited to: names, phone numbers, websites, social media accounts, or any other means of directing a prospective buyer to the listing agent or office…If violated, fines per the Rate & Fee Schedule are applicable. (Amended 05/2015)".

Plaintiff, Grady Hillis, was at a WMAR board meeting over a decade ago when this rule was discussed. At the time, brokers and agents were putting their name and phone number in the public remarks section. Presumably, this was done so that listing brokers or agents could still get buyer leads from their listings after WMAR redacted their personal information out of their listing in the public version of the listing that was sent to the public. During that board meeting, the former president of WMAR, Carla Bowen, stated that it was "unfair" to put broker or agent names and phone numbers in the listing because the broker or agent's "client" that sent the listing could contact the listing agent and work directly with them. No consideration was given to that fact that this practice might violate the Sherman Antitrust Act even though Plaintiff, Grady Hillis, pointed this out. Plaintiffs contend that this action violated the Sherman Antitrust Act then and it still does today.

Over approximately the last 6 years Plaintiffs have received or responded to at approximately 53 emails from WMAR which included imposing fines, threats of imposing fines, or threats to change or remove Plaintiff's listings from MLS. This was done in spite of the provisions of the law as sited previously. During the entire time, Defendants were Plaintiff's employee and still made demands contrary to law.

On February 2, 2018, former WMAR President, Robin Jaeger advised Plaintiff, Grady Hillis, by email that specific names or specific details were not required in MLS related to a broker or agent's financial interest. Plaintiffs contend that this violates the law as previously stated in this complaint.
On February 15, 2018, then WMAR President, Trisha Reid advised Plaintiff, Grady Hillis, by email that Plaintiff, Grady Hillis was correct and admitted that the Defendants do have contradicting rules. She further stated the contradicting rules were going to be changed and updated with new rules within the "next month". To date, no significant rule changes have been made to resolve these issues.

On December 18, 2018, former WMAR President, Trisha Reid, requested by email that Plaintiff, Grady Hillis, join a three member committee to resolve the issues within the Defendant's bylaws, rules and regulations. Plaintiff, Grady Hillis, gladly accepted this nomination and appointment. The other two members were Trisha Reid and Jan Mullins. Jan Mullins is a real estate broker with over 30 years of experience. Over the next six months, several meetings were scheduled and then rescheduled primarily by Trisha Reid. Ultimately, the committee never met.

15

42. Plaintiffs re-allege the allegations contained in Paragraphs 1 through 41 of Plaintiff's Second Amended Complaint.

43. From September 8, 2017 to the present the Defendants restricted commerce and excluded competition by unlawfully and systematically redacting and excluding and interfering with information in the Plaintiff's advertisements and limiting access to Plaintiff's lockboxes on the homes and requiring that particular lockbox on the homes Plaintiffs had for sale in at least 83 transactions.   As such, Defendants are liable for treble damages under this cause of action.

**COUNTS 385-432**

**NEGLEGENCE**

44. Plaintiffs re-allege the allegations contained in Paragraphs 1 through 43  of Plaintiff's Second Amended Complaint.

45. From September 8, 2019 to the present, Defendants owed Plaintiffs a duty to not infringe on the Plaintiff's advertising in violation of Antitrust laws and other state and ferderal laws and administrative code as previously cited

46. Defendants breached this duty by redacting information out of Plaintiff's listings in violation of the previously stated laws at least 48 times..

47. Defendants foreseeably and proximately caused Plaintiff's real estate brokerage license to be at risk and infringed on the duties the Plaintiffs have to supervise all advertising pursuant to Arizona Administrative Code R4-28-502(G); the duties Plaintiffs has to "ensure that all advertising contains accurate claims and repesentations, and **fully states** (emphasis added) factual material relating to the information advertised; and the duties a salesperson or broker has to not

1    misrepresent the facts or create misleading impressions pursuant to Arizona

2    Administrative Code R4-24-502(C).

3    48. The Defendant's actions foreseeably and proximately caused a loss of income

4    and/or caused emotional distress to the Plaintiffs as well as the potential loss of

5    Plaintiff's real estate license.

6    **COUNTS 433-480**

7    **TORTIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP**

8    49. Plaintiffs re-allege the allegations contained in Paragraphs 1 through 48 of

9    Plaintiff's Second Amended Complaint.

10   50. From September 8, 2019 to the present, there has existed a valid contractual

11   business relationship between the Plaintiffs and their clients for at least 48 listings

12   and or sales transactions and/or a business expectancy.  The Defendants had

13   knowledge of this relationship and/or business expectancy. The Defendants

14   intentionally interfered with this contract and/or business expectancy which

15   induced or caused a breach when Defendants redacted Plaintiff's contact

16   information out of at least 48 of Plaintiffs listings and limiting access to lockboxes,

17   causing Plaintiffs to lose potential buyers causing a loss of income, placing

18   Plaintiff's real estate brokerage license at risk and infringing on the duties the

19   Plaintiffs have to supervise all advertising pursuant to Arizona Administrative

20   Code R4-28-502(G); the duties Plaintiffs has to "ensure that all advertising

21   contains accurate claims and repesentations, and **fully states** (emphasis added)

22   factual material relating to the information advertised. A salesperson or broker

23   shall not misrepresent the facts or create misleading impressions." pursuant to

24

Arizona Administrative Code R4-24-502(C). As such, the Defendants actions were improper.

## COUNTS 481-523

## BREACH OF CONTRACT

51. Plaintiffs re-allege the allegations contained in Paragraphs 1 through 50 of Plaintiff's Second Amended Complaint.

**52.** On September 8, 2015 through the present, Defendant WMAR breached this duty when WMAR sent Plaintiff, Grady Hillis at least 43 notices to change items to listings in MLS or be fined without lawful authority to do so, placing Plaintiff's, Grady Hillis and Grady hillis Realty's real estate brokerage license at risk and infringing on the duties the Plaintiffs, Grady Hillis and Grady Hillis Realty have to supervise all advertising pursuant to Arizona Administrative Code R4-28-502(G); the duties Plaintiffs have to "ensure that all advertising contains accurate claims and repesentations, and **fully states** (emphasis added) factual material relating to the information advertised. A salesperson or broker shall not misrepresent the facts or create misleading impressions." pursuant to Arizona Administrative Code R4-24-502(C) and a salesperson or broker's duties to disclose a financial interest in a property pursuant to Arizona Administrative Code R4-24-502(B).

## COUNT 524-566

## NEGLEGENCE

53. Plaintiffs re-allege the allegations contained in Paragraphs 1 through 52 of Plaintiff's Second Amended Complaint.

54. From September 8, 2019 to the present, Defendants owed Plaintiffs a duty to not infringe on the Plaintiff's advertising in violation of Antitrust laws and other state and ferderal laws and administrative code as previously cited

**55.** Defendants breached this duty when WMAR sent Plaintiff, Grady Hillis at least 43 notices to change items to listings in MLS or be fined without lawful authority to do so, placing Plaintiff's, Grady Hillis and Grady Hillis Realty's real estate brokerage license at risk and infringing on the duties the Plaintiffs, Grady Hillis and Grady Hillis Realty have to supervise all advertising pursuant to Arizona Administrative Code R4-28-502(G); the duties Plaintiffs have to "ensure that all advertising contains accurate claims and repesentations, and **fully states** (emphasis added) factual material relating to the information advertised. A salesperson or broker shall not misrepresent the facts or create misleading impressions." pursuant to Arizona Administrative Code R4-24-502(C) and a salesperson or broker's duties to disclose a financial interest in a property pursuant to Arizona Administrative Code R4-24-502(B).

56. Defendants foreseeably and proximately caused Plaintiff's real estate brokerage license to be at risk and infringed on the duties the Plaintiffs have to supervise all advertising pursuant to Arizona Administrative Code R4-28-502(G); the duties Plaintiffs has to "ensure that all advertising contains accurate claims and repesentations, and **fully states** (emphasis added) factual material relating to the information advertised; and the duties a salesperson or broker has to not

1   misrepresent the facts or create misleading impressions pursuant to Arizona

2   Administrative Code R4-24-502(C).

3   57. The Defendant's actions foreseeably and proximately caused a loss of income

4   and/or caused emotional distress to the Plaintiffs as well as the potential loss of

5   Plaintiff's real estate license.

6   **COUNTS 567-609**

7   **TORTIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP**

8   58. Plaintiffs re-allege the allegations contained in Paragraphs 1 through 57 of

9   Plaintiff's Second Amended Complaint.

10  59. From September 8, 2019 to the present, there has existed a valid contractual

11  business relationship between the Plaintiffs and their clients for at least 48 listings

12  and or sales transactions and/or a business expectancy.  The Defendants had

13  knowledge of this relationship and/or business expectancy. At least 43 times

14  Defendant WMAR intentionally interfered with this contract and/or business

15  expectancy which induced or caused a breach when Defendant, WMAR,

16  contacted Plaintiff, Grady Hillis and demanded that he change certain items in

17  Plaintiff, Grady Hillis' listings without the authority to do so, placing Plaintiff Grady

18  Hillis' real estate brokerage license at risk and infringing on the duties the Plaintiffs

19  have to supervise all advertising pursuant to Arizona Administrative Code R4-28-

20  502(G); the duties Plaintiffs has to "ensure that all advertising contains accurate

21  claims and repesentations, and **fully states** (emphasis added) factual material

22  relating to the information advertised. A salesperson or broker shall not

23  misrepresent the facts or create misleading impressions." pursuant to Arizona

24

1    Administrative Code R4-24-502(C). As such, the Defendants actions were

2    improper.

3                                  **COUNTS 610**

4                             **BREACH OF CONTRACT**

5    60. Plaintiffs re-allege the allegations contained in Paragraphs 1 through 59 of

6    Plaintiff's Second Amended Complaint.

7    **61.** From July 30,2020 through December 21, 2021, Defendant, AAR, breached their

8    duty when Defendant, AAR, attempted to penalize and fine Plaintiffs, Grady Hillis

9    and Grady Hillis Realty, by conducting a grievance process without authority to

10   do so and on behalf of a client that Plaintiffs, Grady Hillis and Grady Hillis Realty,

11   never represented, causing Plaintiffs, Grady Hillis and Grady Hillis Realty to lose

12   potential buyers and sellers, causing a loss of income and time.

13                                 **COUNT 611**

14                            **ANTITRUST LAWS**

15   62. Plaintiffs re-allege the allegations contained in Paragraphs 1 through 61 of

16   Plaintiff's Second Amended Complaint.

17   **63.** From July 30, 2020 to December 21, 2021 the Defendants restricted commerce

18   and excluded competition by unlawfully and systematically controlling Plaintiff's

19   relationship with his client and the ultimate terms of the contract between parties

20   unrelated in any way to the defendants by conducting an unlawful grievance

21   process without  lawful authority.  As such, Defendants are liable for treble

22   damages under this cause of action.

23

24

**COUNT 612**

**NEGLEGENCE**

64. Plaintiffs re-allege the allegations contained in Paragraphs 1 through 63 of Plaintiff's Second Amended Complaint.

65. From July 30, 2020 through Decembder 21, 2021, Defendant, AAR, owed Plaintiffs, Grady Hillis and Grady Hillis Realty a duty to not infringe on the Plaintiff's duties to clients and rights to assist them in real estate contracts in violation of the federal and state law and administrative code as previously cited.

66. Defendant, AAR, breached this duty by when Defendant, AAR, attempted to penalize and fine Plaintiff's, Grady Hillis and Grady Hillis Realty by conducting a grievance process without authority to do so and on behalf of a client that Plaintiffs, Grady Hillis and Grady Hillis Realty never represented and against the interest of the client Plaintiff did represent, causing Plaintiffs to lose potential buyers and sellers, causing a loss of income and time.

67. Defendant foreseeably and proximately caused Plaintiffs to lose potential buyers, a loss of income and emotional distress by conducting a grievance process without authority to do so and on behalf of a client that Plaintiffs never represented and against the interest of the client Plaintiff did represent, causing Plaintiffs to lose potential buyers and sellers, causing a loss of income and time.

**COUNT 613**

**TORTIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP**

68. Plaintiffs re-allege the allegations contained in Paragraphs 1 through 67 of Plaintiff's Second Amended Complaint.

69. From July 30, 2020 through December 21, 2021, there existed a valid contractual relationship between the Plaintiffs, Grady Hillis and Grady Hillis Realty and their client  and/or a business expectancy.  The Defendant, AAR, had knowledge of this relationship and/or business expectancy. The Defendant, AAR, intentionally interfered with this contract and/or business expectancy which induced or caused a breach when Defendant, AAR conducted a grievance process without authority to do so and on behalf of a client that Plaintiffs, Grady Hillis and Grady Hillis Realty never represented and against the interest of the client Plaintiff did represent, causing Plaintiffs, Grady Hillis and Grady Hillis Realty to lose potential buyers and sellers, causing a loss of income, time and emotional distress.

70. From September 8, 2019 to the present, there has existed a valid contractual business relationship between the Plaintiffs and their clients for at least 48 listings and or sales transactions and/or a business expectancy.  The Defendants had knowledge of this relationship and/or business expectancy. At least 43 times Defendant WMAR intentionally interfered with this contract and/or business expectancy which induced or caused a breach when Defendant, WMAR, contacted Plaintiff, Grady Hillis and demanded that he change certain items in Plaintiff, Grady Hillis' listings without the authority to do so, placing Plaintiff Grady Hillis' real estate brokerage license at risk and infringing on the duties the Plaintiffs have to supervise all advertising pursuant to Arizona Administrative Code R4-28-502(G); the duties Plaintiffs has to "ensure that all advertising contains accurate claims and repesentations, and **fully states** (emphasis added) factual material relating to the information advertised. A salesperson or broker shall not misrepresent the facts or create misleading impressions." pursuant to Arizona

Administrative Code R4-24-502(C). As such, the Defendants actions were improper.

**WHEREFORE,** Plaintiffs pray for judgment as follows

1.	As a direct and proximate result of Defendants' breach of contract, Plaintiffs have suffered damages in an amount to be proven at trial.

2.	As this cause of action arises out of contract, Plaintiffs are entitled to their reasonable attorney's fees and costs, together with interest thereon at the legal rate per annum, accrued and accruing, from date of judgment until paid in full in accordance with A.R.S. §§ 12-341 and 12.341.01.

3.	For compensatory damages in an amount to be proven at trial;

4.	Punitive Damages in the amount of $1,180,200,000.00;[6]

5.	For interest on any judgment due and owing to Plaintiffs at the legal rate per annum, accrued and accruing, from date of judgment until paid in full as provided under Arizona law;

---

[6] The amount of the Punitive Damages is the Plaintiff's estimate of the Defendant's annual gross income. It is based upon the $843.00 per year that Plaintiff, Grady Hillis, pays to the Defendants per year for their services times the 1.4 million Realtors the DOJ says there are in this country. (Some estimates now show this as high as 1.5 million). Using the DOJ's more conservative number, this total is $1,180,200,000.00.

Further, there are 89 Antitrust causes of action in this complaint. All of them could have been broken into three separate causes of action for the Defendants redacting broker/agent information out of (FLEX) MLS, limiting access to lockboxes and not allowing broker/agent financial information to be put in the listing. This total total would be as high as 267 causes of action. Using the more conservative number of 89 and the lower number in fines in the Antitrust statutes ($1,000,000.00) this total is $89,000,000.00. These totals together equal $1,269,200,000.00. (In addition to up to 890 years in prison and several Felony counts).

Although the DOJ continues to make strides to remedy this nationwide problem, the Defendants continue to violate the law having a detrimental effect on at least 1.4 million real estate agents and brokers and a much greater number of home buyers in this country. Nothing less than a large Punitive Damages result and a permanent injunction will cause the Defendants to change their illegal ways.

6.     For injunctive relief permanently enjoining Defendants from interfering with Plaintiff's real estate business in any way to include all real estate brokers and agents in Arizona or states with similar laws.

7.     Plaintiffs request a jury on all counts.

8.     For such other and further relief as the Court deems be just and proper in the circumstances.

**RESPECTFULLY SUBMITTED**  this  20th day of July, 2022.

**CORONADO LAW FIRM, P.L.L.C.**

/s/ Eduardo H. Coronado
Eduardo H. Coronado, Esq.
Attorneys for Plaintiffs

1  Copies of the foregoing to:

2  Douglas C. Northup
   FENNEMORE CRAIG, P.C.
3  2394 E. Camelback Road, Suite 600
   Phoenix, Arizona 85016
4  dnorthup@fclaw.com
   Attorneys for National Association
   of Realtors
5

6  Ethan Glass (pro hac vice)
   Michael D. Bonanno (pro hac vice)
   QUINN EMANUEL URQUHART & SULLIVAN, LLP
7  1300 I Street, Suite 900
   Washington, D.C. 20005
8  ethanglass@quinnemanuel.com
   mikebonanno@quinnemanuel.com
9  Attorneys for National Association
   of REALTORS®

10 Sean P. Healy
   Kathryn Honecker
11 LEWIS BRISBOIS
   2929 North Central Avenue, Suite 1700
12 Phoenix, Arizona 85012
   Sean.Healy@lewisbrisbois.com
13 Kathryn.Honecker@lewisbrisbois.com
   Attorneys for White Mountain
14 Association of Realtors

15 Todd R. Seelman (pro hac vice forthcoming)
   LEWIS BRISBOIS
16 1700 Lincoln Street, Suite 4000
   Denver, Colorado 80203
17 Todd.Seelman@lewisbrisbois.com
   Attorneys for White Mountain
   Association of Realtors
18
   **GUST ROSENFELD P.L.C.**
19 One E. Washington Street, Suite 1600
   Phoenix, AZ  85004
20 (602) 257-7481 Telephone
   (602) 254-4878 Facsimile
21 Scott A. Malm – 018484
   Mina C. O'Boyle – 031578
22 samalm@gustlaw.com
   moboyle@gustlaw.com
23 Attorneys for Arizona Association
   Of Realtors

24