SEAN P. HEALY, SB #018393
Sean.Healy@lewisbrisbois.com
KATHRYN HONECKER, SB #020849
Kathryn.Honecker@lewisbrisbois.com
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
2929 North Central Avenue, Suite 1700
Phoenix, Arizona 85012-2761
Telephone: 602.385.1040

TODD R. SEELMAN (PHV)
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
1700 Lincoln Street, Suite 4000
Denver, Colorado 80203
Telephone: 303.861.7760

*Attorneys for Defendant*
*White Mountain Association of Realtors*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Grady Hillis, Grady Hillis Realty, and GLH Property Investments LLC, | No. 3:21-CV-08194-SPL |
| Plaintiffs, | **DEFENDANT WHITE MOUNTAIN ASSOCIATION OF REALTORS' MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| vs. | |
| National Association of Realtors, Arizona Association of Realtors, Arizona Realtors; White Mountain Association of Realtors; John Does I-V; Jane Does I-V; ABC Corporations I-V; And XYZ Partnerships I-V, | **(Oral Argument Requested)** *(The Honorable Steven P. Logan)* |
| Defendants. | |

4891-1424-7981.2

Defendant White Mountain Association of Realtors ("WMAR") moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss *with prejudice* the claims brought by Plaintiffs Grady Hillis, Grady Hillis Realty ("GHR"), and GLH Property Investments LLC ("GLH LLC") (collectively, "Plaintiffs") in the Second Amended Complaint ("SAC") (Dkt. 56) for failing to state claims as a matter of law for which relief can be granted. This Motion is based on the following Memorandum of Points and Authorities, Defendant's Request for Judicial Notice ("RJN"), the Court's file for this action, and such other matters as the Court may consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

In dismissing the First Amended Complaint (Doc. 11) ("FAC"), the Court noted that in addition to the FAC's unreasonable length and excessive, redundant counts and paragraphs, Plaintiffs had improperly lumped all the "Defendants" together, making it impossible to identify which Defendant did what to whom, with whom, and when. (Doc. 51) ("Order") at p. 4. In addition, the Court observed that, despite its inordinate length, the FAC was "largely devoid of facts[.]" Order at p. 5. With these infirmities in mind, the Court admonished Plaintiffs that *if* they intended to amend their complaint, "Plaintiffs risk sanctions if the second amended complaint is legally frivolous or factually misleading." Order at p. 5 (citing Rule 11).

Ignoring the Court's clear warnings, Plaintiffs filed a 26-page Second Amended Complaint (Doc. 56) ("SAC") asserting 613 counts, which is nothing more than an extraordinarily crude cut-and-paste effort derived from the FAC that adds no additional facts nor any meaningful attempt to specify which Defendant did what, to whom, with whom, where and when. Albeit shorter in length, the SAC is ultimately (as the Court predicted) "legally frivolous and factually misleading[,]" requiring its dismissal *with prejudice* under



4891-1424-7981.2

1

Rule 12(b)(6).[1] As shown below, in addition to failing to comply with Federal Rules of Civil Procedure 8(a)'s and 10(a)'s requirements and continuing to assert claims on behalf of a legal fiction with no standing to sue, the SAC lacks well-pled facts to support any of Plaintiffs' alleged antitrust, breach of contract, negligence, or tortious interference with contractual relations claims. Plaintiffs' failure to cure these deficiencies in three attempts shows the futility of amendment.[2]

## II.   LEGAL STANDARD

Dismissal is appropriate on a Rule 12(b)(6) motion if the named Plaintiffs' alleged facts do not state a claim for relief that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6). "A claim has facial plausibility when the plaintiff pleads *factual* content that allows the court to reasonably infer that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added). *Twombly* and its progeny make clear that complaints that do nothing more than state legal conclusions, recite elements of antitrust claims, or fail to allege facts to plausibly support each element of each antitrust claim should be dismissed under Rule 12(b)(6). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

Moreover, allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party, *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). But the Court should not accept as true allegations contradicted by any of the Complaint's other allegations, exhibits, or matters properly subject to judicial notice or

---

[1] Dismissal *with prejudice* is proper here as Plaintiffs have had numerous opportunities to cure their significant defects but have failed to do so three times, hence, further amendment would be futile. Also, as Plaintiffs failed to cure their defects and comply with the Court's Order, WMAR reserves its right to seek sanctions against Plaintiffs. *See* Order at 5 (citing *Truesdell v. S. Cal. Permanente Med. Grp.*, 293 F.3d 1146, 1153 (9th Cir. 2002)).

[2] Plaintiffs' SAC has dropped the previously asserted claims for i) violations of the First Amendment and ii) sAiding and Abetting Tortious Conduct.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4891-1424-7981.2                                                2

1   consideration. *Sprewell v. Golden St. Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended by*
2   275 F.3d 1187 (2001). "Nor is the court required to accept as true allegations that are merely
3   conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.*

4        In addition, a plaintiff filing a complaint must comply with, *inter alia*, Federal Rules
5   of Civil Procedure 8 and 10. Rule 8(a)(2) requires that a complaint contain "a short and plain
6   statement of the claim showing that the pleader is entitled to relief," while Rule 10(b)
7   requires that a party i) "state its claims or defenses in numbered paragraphs, each limited as
8   far as practicable to a single set of circumstances" and ii) "state each claim founded on a
9   separate transaction or occurrence in a separate count."

10  ## III.   ARGUMENT

11       The Court should dismiss Plaintiffs' claims because their allegations in the SAC still
12  do not allow the Court to "draw the reasonable inference" that WMAR is "liable for [any]
13  misconduct alleged."  *Iqbal*, 556 U.S. at 678. And, as before, additional legal defects also
14  require dismissal on alternative grounds.

15       **A.     Plaintiff Grady Hillis Realty is a Fictitious Entity that Must be Dismissed**

16       "[T]he designation 'd/b/a,' or 'doing business as,' does not create a separate legal or
17  factual entity distinct from the person operating the business[.]" *Castle v. Barrett-Jackson*
18  *Auction Co., Ltd. Liab. Co.*, 276 P.3d 540, 543 n.2 (Ariz. Ct. App. 2012). As explained in
19  WMAR's Motion to Dismiss the FAC (Doc. 36), Plaintiff Grady Hillis Realty is merely
20  Grady Hillis' fictitious "doing business as" tradename, *see* RJN, ¶ 1–2, Exs. A–B, that is not
21  a legally recognized entity separate from Grady Hillis. GHR's claims can only be brought
22  by its sole proprietor, Grady Hillis—not in its own name, as GHR is a legal fiction.
23  Nevertheless, despite this issue being raised in WMAR's Motion to Dismiss the FAC, the
24  SAC continues to assert claims on behalf of "Plaintiff Grady Hillis Realty" without
25  providing any allegations that would alter the conclusion that—as a matter of law—GHR
26  lacks standing to bring an action in its own name and all of its claims must be dismissed.

27
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

### B.      Plaintiffs' Antitrust Allegations Must be Dismissed[3]

The SAC purports to allege both conspiracy and monopoly claims.[4] To state a conspiracy claim under Section 1 of the Sherman Act (and A.R.S. § 44-1402), the complaint must allege evidentiary facts which, if true, will prove: (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain interstate trade or commerce; (3) which actually injures competition. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1046 (9th Cir. 2008). However, there are no facts in the SAC that support the plausible existence of: (i) an antitrust agreement involving WMAR; (ii) antitrust injury to Plaintiffs arising directly from WMAR's conduct; or (iii) harm to competition arising directly from WMAR's conduct. Moreover, to support an antitrust conspiracy, for example, the SAC must allege facts that support something more than mere parallel conduct of Defendants. *Twombly*, 550 U.S. at 554-560; *Kendall*, 518 F.3d at 1042; *Iqbal*, 556 U.S. at 668. The something more is often referred to as "plus factors," see *Twombly*, 550 U.S. at 557 n.4; *In re Citric Acid Litig.*, 191 F.3d 1090, 1102 (9th Cir. 1999). The SAC does not allege that WMAR entered into a conspiracy with anyone, including the other Defendants, nor does the SAC allege a single "plus factor" that would support a conspiracy claim under the Sherman Antitrust Act or the Arizona Uniform State Antitrust Act.[5]

---

[3] Plaintiffs' Antitrust Counts are labeled in the SAC as "Counts 302–384" and "Count 611."

[4] Plaintiffs allege three federal and Arizona antitrust claims for conspiracy and monopoly: (i) Conspiracy under Section 1 of the Sherman Act, 15 U.S.C. § 1; (ii) Conspiracy under the Arizona Uniform State Antitrust Act, A.R.S. § 44-1402; and (iii) Monopoly under the Arizona Uniform State Antitrust Act, A.R.S. § 44-1403. *See* SAC ¶¶ 23–27.

[5] Conspiracy and monopoly claims arising under Arizona Uniform State Antitrust Act (A.R.S. § 44-1402 and § 44-1403) are similar to conspiracy and monopoly claims arising under the Sherman Antitrust Act (15 U.S.C. §§ 1–2). Courts interpreting claims under A.R.S. § 44-1402 and § 44-1403 generally look to federal antitrust law as a guide. *See Wedgewood Inv. Corp. v. Internat'l Harvester Co.*, 613 P.2d 620 (Ariz. Ct. App. 1979); Arizona Uniform State Antitrust Act, A.R.S. § 44-1412 (federal state antitrust harmonizing statute). Thus, WMAR's antitrust analysis addresses the federal and Arizona antitrust claims by relying on federal antitrust interpretations.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4891-1424-7981.2

4

To state a monopoly claim under Section 2 of the Sherman Act (and A.R.S. §44-1403), the complaint must allege evidentiary facts which, if true, will prove: (1) the possession of monopoly power in the relevant market; (2) the willful acquisition or maintenance of that power; and (3) causal antitrust injury. *FTC v. Qualcomm Incorporated*, 969. F.3d 974, 990 (9th Cir. 2020). The "threshold step is any antitrust case is to accurately define the relevant market[.]" *Id*. at 992. The relevant market enables a court to assess whether a particular defendant had power in the relevant market and whether it had used that power to lessen or destroy competition. *Id*. (citations omitted). However, there are no facts in the SAC that support the plausible existence of: (i) a relevant market; (ii) WMAR's monopoly power in the relevant market; (iii) WMAR's exercise of exclusionary conduct in the relevant market; (iv) antitrust injury to Plaintiffs arising directly from WMAR's exclusionary conduct in the relevant market; or (v) harm to competition arising directly from WMAR's exclusionary conduct in the relevant market.

Moreover, the SAC's Antitrust Allegations that lump all "Defendants" together are insufficient to support an antitrust claim. Because antitrust claims are complex, time-consuming, and expensive to defend, antitrust complaints must provide sufficient facts to support **each** antitrust claim against **each** Defendant to satisfy the notice requirements of Rule 8(a)(2). *See  Twombly*, 550 U.S. at 554–56, 570; *Iqbal*, 556 U.S. at 678; *Kendall*, 518 F.3d at 1047–48; *Oasis Foot & Ankle LLC v. HonorHealth*, 2021 WL 4319211 at *3 (D. Ariz. September 23, 2021). As such, to survive a motion to dismiss, allegations asserting antitrust violations among multiple defendants require facts supporting who, did what, to whom (or with whom), where, and when as to **each** of them. *Twombly*, 550 U.S. at 565 n.10; *Kendall*, 518 F.3d at 1047–48; *Oasis*, 2021 WL 4319211 at *3.[6] The SAC plainly fails to do

---

[6] As this Court observed in *Oasis* last year, "Those allegations reference 'the Orthopedist Defendants,' the 'defendants,' or just the 'collusive agreement,' but failing to allege 'who, did what, to whom (or with whom), where, and when.' *Kendall v. Visa U.S.A., Inc*., 518 F.3d 1042, 1048 (9th Cir. 2008). A plaintiff must do more than 'offer labels and conclusions or a formulaic recitation of the elements of a cause of action.' *Iqbal*, 556 U.S. at 678 (quotation (footnote continued)


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    so against WMAR.

2        Importantly, only 14 paragraphs of the SAC's 70 total paragraphs relate to Plaintiffs'

3    antitrust claims. *See* SAC ¶¶ 9–14, 23–27, 42–43. Of these, 10 paragraphs (the vast majority)

4    lump all "Defendants" together, rather than setting forth specific allegations against any

5    individual Defendant, including WMAR. *See* SAC ¶¶ 9, 14, 23–27, 42–43. Consequently,

6    as the Court acknowledged in its order dismissing the FAC, such allegations are insufficient

7    to support any antitrust claim against WMAR. *See* Doc. 51 (Order), at 4 (citing *Adobe Sys.,*

8    *Inc. v. Blue Source Grp., Inc.*, 125 Supp. 3d 945, 964 (N.D. Cal. 2015)).

9        Only the three remaining paragraphs specifically identify WMAR individually:

10   ***Paragraph 10***—WMAR alone redacted personal broker or agent information from multiple

11   listing service pursuant to its own rules; ***Paragraph 11***—WMAR and AAR each adopted

12   rules regarding the disclosure of personal broker or agent information transmitted through

13   the multiple listing service; and ***Paragraph 12***—WMAR and AAR each required the use of

14   approved lockboxes (and key access) placed on the doors of homes offered for sale through

15   the multiple listing service. *See* SAC ¶¶ 10-12.[7] However, on their face, each of these

16   allegations amount to nothing more than separate, independent action by WMAR and AAR,

17   and do not even mention NAR, and, thus, fail to support Plaintiffs' antitrust claims.

18       The SAC's allegations that state legal conclusions or recite antitrust statutory

19   language are also insufficient to support an antitrust claim. "A pleading that offers 'labels

20   and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not

21   do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *see Kendall*, 518 F.3d at

22   1047–48. The allegations in ¶¶ 23–26, here, do nothing more than recite language directly

23   from the federal and Arizona antitrust statutes. *See* SAC ¶¶ 23–26. Paragraphs 27 and 43 do

24   nothing more than offer "labels and conclusions" or a "formulaic recitation of the elements

25   of a cause of action"—both stating that "Defendants restricted commerce and excluded

26   ───────────────────

27   marks omitted)." *Oasis*, 2021 WL 4319211 at *3.

28   [7] Each of these allegations are nearly identical to FAC ¶¶ 16–18.


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

competition…"—without stating facts that support what commerce was restricted, what competition was excluded, by what conduct, by whom, and when. *See* SAC ¶¶ 27, 43. As such, these allegations are legally insufficient to support any antitrust claim against WMAR.

### C.   Plaintiffs' Breach of Contract Claims Must be Dismissed[8]

Plaintiffs' breach of contract claims fail to state plausible claims against WMAR. To state a claim for breach of contract, a plaintiff must allege (1) the existence of a contract, (2) a right thereunder, (3) a breach by a party, and (4) damages. *Graham v. Asbury*, 540 P.2d 656, 657 (1975). The SAC fails to do so.

***First***, Plaintiffs again fail to identify purported contracts with WMAR. When, as here, a complaint fails to allege facts supporting an offer, acceptance, consideration, and sufficiently specific terms, the complaint must be dismissed. *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 610 (9th Cir. 2020); *see also Golden Pisces, Inc. v. Fred Wahl Marine Constr., Inc.*, 495 F.3d 1078, 1081 (9th Cir. 2007) (mutual assent required for contract formation); Fed. R. Civ. P. 12(b)(6). The existence of a contract is an element of a breach of contract claim. *In re Facebook*, 956 F.3d at 610. And *Twombly* and its progeny make clear that Rule 8(a)(2) requires a complaint to allege sufficient facts supporting each element of ***each*** claim as to ***each*** defendant to give ***each*** defendant adequate notice of the claims lodged against them. *Twombly*, 550 U.S. at 555, 565, 565 n.10.

Yet, as with the FAC, Plaintiffs fail to allege any facts or attach any documents supporting the existence of a contract between ***each*** Plaintiff and WMAR. Instead, the SAC improperly lumps all individual "Plaintiffs" together, and often lumps all or some individual "Defendants" together, giving the false impression that such a contract exists. *See, e.g.*, SAC at ¶ 29 ("Plaintiffs entered into a contract with Defendants on or about January 1, 1999 where

---

[8] Plaintiffs' Breach of Contract Counts are labeled in the SAC as "Counts 1–301," "Counts 481–523," and "Count 610."

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Plaintiffs paid Defendants to provide advertising through an MLS service and access to homes through lockboxes to enhance Plaintiffs business as a real estate agent or broker.").[9]

And the allegations Plaintiffs make are often incomprehensible. Consider, for example, this allegation from SAC ¶ 34:

> On September 8, 2015 through the present, Defendant NAR, AAR and WMAR breached their duty when these Defendants created, adopted and enforced a Code of Ethics, bylaws, rules, regulations [sic] and procedures (collectively referre [sic] to as rules) without any authority to do so. Further, these rules were ati-competitive [sic] and violated federal and state law and admistrative [sic] code. As a result, Plaintiffs were damaged.

WMAR has no idea, from reading this paragraph, 1) who made any offer, 2) who accepted that offer, or 3) the terms of any contract. This paragraph, as with the rest of the SAC, "altogether fails to give Defendants fair notice of Plaintiffs' claims." (DKT 51 at 3.)

Plaintiffs further attempt to blur *Twombly*'s requirements by simply referring to WMAR's Bylaws and its MLS Rules and Regulations ("MLS Rules") in the SAC, without factually supporting how the MLS Rules constitute a contract between each Plaintiff and WMAR. *See* SAC ¶ 11 n.3. And they throw these requirements away when they seek relief based on alleged contracts between WMAR and various non-parties, without any facts evidencing such contracts or explaining why Plaintiffs would be entitled to enforce such contacts. *See, e.g.*, SAC ¶¶ 34, 37, 39, 41, 52.

***Second***, Plaintiffs fail to identify a contractual right to control the language in brokerage listings or the right of non-WMAR members to access lockboxes. To survive a motion to dismiss, a plaintiff must identify the contractual right he has allegedly been denied. *See Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1133 (9th Cir. 2014) (affirming dismissal where the plaintiff "allege[d] no contractual right"). While Plaintiffs complain about lockbox access and MLS control over listings, the SAC fails to tie these general complaints to violations of

---

[9] This paragraph, as with so many others, is identical to a paragraph in the FAC. *See* FAC ¶ 42. Indeed, it appears that most of the SAC's paragraphs were copied and pasted from the FAC, with little to no alteration. *See generally* FAC.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4891-1424-7981.2                                8

any contractual rights and fails to identify any contract allowing them to dictate the specific language contained within MLS listings. To the contrary, ***Plaintiffs allege the opposite***: "WMAR and AAR have adopted rules and fines that do not allow for the disclosure of personal broker or agent information in the public remarks of listings including, but not limited to, names, phone numbers, social media accounts." SAC ¶ 11. Plaintiffs also fail to identify any contract wherein WMAR promises to give lockbox access to non-WMAR "brokers and agents in Arizona." As with the MLS limitations issue, Plaintiffs allege that these restrictions are ***required*** by WMAR rules: "AAR and WMAR ***require*** the use of their approved lockbox on homes (Supra) that are for sale to be used to access the keys for homes. AAR and WMAR limit who can use the lockboxes to only members of WMAR." *Id.* at ¶ 12 (emphasis added). Plaintiffs' disagreement with the rules does not equate breach of contract. Notably, the FAC made *nearly identical allegations*. *Compare* FAC ¶ 193 *with* SAC ¶ 39.

***Third***, Plaintiffs fail to adequately allege a breach. Not only must a plaintiff identify a contractual right, but also he must allege how, *under the alleged contract*, that right was violated. *See*, *e.g.*, *MacKay v. Loew's, Inc.*, 182 F.2d 170, 172 (9th Cir. 1950) (upholding grant of dismissal where "amended complaints fail[ed] to allege that [defendants] violated a provision of the…contract"). Here, even if WMAR's Bylaws and MLS Rules were contracts (they are not), Plaintiffs failed to allege any breach; rather, they allege that WMAR acted ***consistent with these rules***, which, for example, prohibit the inclusion of certain information in the public remarks section of broker listings and give WMAR "the authority to remove from the MLS system, any listing violations…." *Compare* SAC ¶ 11 n.3 (alleging WMAR has authority to exclude certain information) *with* ¶ 11 (complaining WMAR acted consisted with this authority). Plaintiffs also allege that WMAR's rules require WMAR to maintain lockboxes, but that access to these lockboxes is limited to "only members of a particular association…." SAC ¶ 12. But Plaintiffs do not plead that WMAR prevented *Plaintiffs* from having lockbox access; only that WMAR prevented *non-parties* from having lockbox access. In other words, Plaintiffs plead that WMAR restricts lockbox access to WMAR



1    members **consistent with its rules**. *Id.* Again, the FAC made *functionally identical*

2    *allegations*. (*See* Dkt. 36 at 9-10.).

3         **Fourth**, Plaintiffs fail to adequately allege damages. It is axiomatic that a plaintiff

4    must plead damages flowing from a breach. *Graham*, 112 Ariz. at 185, 540 P.2d at 657

5    (citations omitted) (holding that to state a contract claim, plaintiff must prove "the existence

6    of the contract, its breach and the **resulting** damages") (emphasis added); *accord Ruiz v.*

7    *Gap, Inc.*, 380 Fed. Appx. 689, 692 (9th Cir. 2010) (citations and quotations omitted) ("An

8    essential element of a claim for breach of contract are damages **resulting from the breach**")

9    (emphasis added); *see also Gibson v. Office of the AG*, 561 F.3d 920, 929 (9th Cir. 2009)

10   ("because…Plaintiffs failed to allege foreseeable damages, Plaintiffs failed to state a

11   contract claim").[10] Here, as discussed, Plaintiffs do not allege how WMAR breached any

12   contract, or even that any contract existed. Plaintiffs identify rules to which they are subject

13   and assert that WMAR is following these rules. The FAC contains no allegations regarding

14   how any **breaches** have harmed Plaintiffs. Instead, Plaintiffs assert that WMAR is

15   **complying** with its alleged contracts with Plaintiffs, and somehow being damaged.

16        Even if the Court were to entertain Plaintiffs' theory that WMAR breached a contract

17   with Plaintiffs by adhering to that alleged contract, Plaintiffs fail to identify how **each** of

18   them were actually harmed by WMAR's conduct. Instead, they merely assert that WMAR's

19   actions have "caus[ed] Plaintiffs to lose potential buyers causing a loss of income, placing

20   Plaintiff's real estate brokerage license at risk," and "infringing" on various "duties"

21   Plaintiffs allegedly have "pursuant to Arizona Administrative Code R4-28-502(G) … [and]

22   (C)." SAC ¶ 37 (which, notably, comprises "COUNT 3 through 117" of Plaintiff's breach

23   of contract claims). Just as a pleading that lumps all the defendants together fails to provide

24   sufficient notice of a claim, so too does a pleading that lumps all the plaintiffs together. That

25

26   _____

27   [10] Moreover, if the Court finds that Plaintiffs failed to state a contract claim, the Court need
     not even reach the issue of whether damages were sufficiently alleged. *See Hannibal-Fisher*

28   *v. Grand Canyon Univ.*, 523 F. Supp. 3d 1087, 1096 n.3 (D. Ariz. 2021).



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  is especially true in a case like this, where only the individual Plaintiff is a licensed broker

2  who would have had any duties under Arizona's Administrate Code, and who's real estate

3  brokerage license could ever have been at risk. *See* RJN, ¶¶ 1–3. Moreover, Plaintiffs

4  complain only of speculative damages, which are insufficient. *Clapper v. Amnesty Internat'l*

5  *USA*, 568 U.S. 398, 401 (2013). Dismissal of the Breach of Contract Counts is appropriate.

6      ***Finally***, GHR is a sole proprietorship. SAC ¶ 3. Therefore, GHR is not a separate

7  entity in fact or law from Grady Hillis, himself. *See State v. Ivanhoe*, 798 P.2d 410, 412

8  (Ariz. Ct. App. 1990). And Mr. Hillis did not start doing business as GHR until 2011. *See*

9  RJN, ¶¶ 1–2, Exs. A–B. GLH LLC was not formed until 2015. *See id.* ¶ 3, Ex. C. Even if,

10  *arguendo*, these documents were contracts, GHR's and GLH LLS's claims would fail for

11  lack of privity as GHR and GLH LLS did not exist when the contract was allegedly created

12  in 1999. *Pimal Prop., Inc. v. Cap. Ins. Grp., Inc.*, 2012 U.S. Dist. LEXIS 24172, 2012 WL

13  608392, at *3 (D. Ariz. Feb. 27, 2012).

14      **D.      Plaintiffs' Negligence Claims Must be Dismissed**[11]

15      "Under current Arizona common law, [P]laintiffs were required to prove four

16  elements to establish a claim for negligence: (1) the existence of a duty recognized by law

17  requiring defendants to conform to a certain standard of care; (2) defendants' breach of that

18  duty; (3) a causal connection between the breach and plaintiffs' resulting injury; and (4)

19  actual damages." *Delci v. Gutierrez Trucking Co.*, 275 P.3d 632, 634 (Ariz. Ct. App. 2012).

20  "If no duty is owed, a negligence action cannot be maintained." *Id.* As shown below,

21  Plaintiffs fail to allege sufficient facts to state a claim for negligence.

22      ***First***, as with the FAC, the SAC lacks facts from which the Court could infer that

23  WMAR owed ***any*** plaintiff a duty—recognized by law—to conform to a particular standard

24  of conduct to protect them against unreasonable risks of harm with regard to the MLS listing

25  or lockbox access. *See Delci*, 275 P.3d 634 (defining duty). Importantly, under Arizona law,

---

[11] Plaintiffs' 90 Negligence Counts are labeled in the SAC as "Counts 385-432," "Counts 524-566," and "Count 612."

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4891-1424-7981.2                    11

foreseeability is not a factor in determining the existence of a duty. *Quiroz v. Alcoa Inc.*, 416 P.3d 824, 828–29 ¶¶ 11–13 (Ariz. 2018) (discussing *Gipson v. Kasey*, 150 P.3d 228, 231 ¶¶ 14–17 (Ariz. 2007)). And, "[i]f no duty exists, defendant 'is not liable even though he may have acted negligently in light of the foreseeable risks.'" *Luce v. State Title Agency*, 950 P.2d 159, 161 (Ariz. Ct. App. 1997) (quoting *Markowitz v. Ariz. Parks Bd.*, 706 P.2d 364, 368 (Ariz. 1985)). Instead, "duty in Arizona is based on either recognized common law special relationships or relationships created by public policy." *Quiroz*, 416 P.3d at 829 ¶ 14; *accord Gipson*, 150 P.3d at 231 ¶¶ 14–17. The general rule is that absent a special relationship such as that existing between common carrier-passenger, innkeeper-guest, landowner-invitee, custodian-ward, shopkeeper-business invitee, or employer-employee, no duty exists to take affirmative precaution for the aid or protection of another. *Bogue v. Better-Bilt Aluminum Co.*, 875 P.2d 1327, 1339 (Ariz. Ct. App. 1994) (citing RESTATEMENT (2D) OF TORTS §§ 314A, 314B (1965); Prosser and Keeton on the Law of Torts § 56, at 373–85. Here, the SAC, like the FAC, lacks factual allegations of a special relationship between WMAR and ***any*** plaintiff to create a duty. *See generally* SAC (Plaintiffs do not allege an employer-employee, landowner-invitee/licensee, common carrier-passenger, or innkeeper-guest relationship with WMAR). Indeed, Plaintiffs only attempt to define their relationship by an unidentified contract from 23 years ago for advertising and lockboxes. *See, e.g.*, SAC, ¶ 29. Plaintiffs cannot allege a special relationship recognized by law.

Moreover, public policy considerations also do not create a duty because public policy in Arizona is based on state statutes, *Quiroz*, 416 P.3d at 830 ¶ 18, and "a statute may only establish a duty of care if it is designed to protect the class of persons, in which the plaintiff is included, against the risk of the type of harm which has in fact occurred as a result of its violation." *Trinidad v. BioLife Plasma Servs., L.P.*, No. 20-2496, 2021 WL 4805325, at *3 n.2 (D. Ariz. Oct. 14, 2021). Moreover, as statutes that protect against "purely economic loss" do not create a duty, *Sullivan v. Pulte Home Corp.*, 354 P.3d 424, 428 ¶ 11 (Ariz. Ct. App. 2015), only criminal statutes having to do with a plaintiff's physical safety have been found to create a duty under Arizona law. *Nelson v. Bank of Am.*, No. CV 11-



1   1117-PHX-SRB, 2012 U.S. Dist. LEXIS 192286, at *14–15 (D. Ariz. Jan. 17, 2012) (*citing*

2   *Gipson*, 150 P.3d at 233). Absent such a statute, courts in Arizona are advised to "exercise

3   great restraint in declaring public policy," as it is best left to the legislature. *Quiroz*, 416 P.3d

4   at 830 ¶ 19.

5        Here, Plaintiffs allege that "Defendants owed Plaintiffs a duty to not infringe on the

6   Plaintiff's advertising in violation of Antitrust laws and other state and ferderal [*sic*] law and

7   administrative code [*sic*] [concerning real estate agent and broker advertising] as previously

8   cited." SAC ¶¶ 46, 54; *see id.* ¶¶ 47, 56, 65. These are neither criminal statutes nor are they

9   designed to protect real estate brokers and agents from physical harm. *Cf.* SAC ¶¶ 57, 66–

10   67 (alleging loss of "potential buyers and sellers," "loss of income," and "potential loss of

11   … real estate license"). Moreover, the state laws and regulations governing real estate agent

12   and broker advertising impose duties on ***Plaintiffs***—not WMAR. *See Trinidad*, 2021 WL

13   4805325, at *3 n.2 (finding statute holding plaintiff's class liable was not intended to create

14   a duty for plaintiff's benefit). As no duty recognized by law exists between WMAR and any

15   Plaintiff, their negligence counts fail as a matter of law.

16        ***Second***, because Plaintiffs failed to allege any specific duty that was required by any

17   standard of care, they are unable to allege a corresponding breach. Without factual

18   allegations showing a plausible breach of a standard of care, the negligence claims fail.

19        ***Third***, Plaintiffs also failed to plead that they suffered an actual injury. Instead, they

20   plead speculative economic loss in the form of "potential buyers and sellers," "loss of

21   income," and "potential loss of … real estate license." *See, e.g.*, SAC ¶¶ 47–48, 56–57 . Like

22   the FAC, the SAC alleges no actual, ***present*** loss or injury. Again, mere allegations of

23   speculative harm is not enough. *See, e.g.*, *Clapper*, 568 U.S. at 401 (finding injury that "rests

24   on a speculative chain of possibilities that does not establish that … potential injury is

25   certainly impending"); *De Stories v. Phoenix*, 744 P.2d 705, 708–09 (Ariz. Ct. App. 1987)

26   (finding allegations of increased risk of harm did not constitute a present injury for

27   negligence). Neither are claims, as alleged here, of mental suffering unaccompanied by

28   physical injury. *See Id.*, 744 P.2d at 710–11 (finding the existence of physical harm or

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

medically identifiable effect is a prerequisite for mental anguish claim); SAC ¶¶ 48, 57, 67. Plaintiffs' lack of actual injury is fatal to their negligence counts.

***Finally***, Plaintiffs failed to plead ***facts*** to satisfy the causation element—that WMAR's alleged acts or omissions were reasonably likely the cause of any alleged injury, not that it merely made it possible. *Purcell v. Zimbelman*, 500 P.2d 335 (Ariz. 1972). Dismissal of the negligence counts is required.

### E.    Plaintiffs' Tortious Interference Claims Must be Dismissed[12]

To plead a prima facie claim for tortious interference with contract, a plaintiff must plead facts to establish the following elements:  "[i.] the existence of a valid contractual relationship or business expectancy; [ii.] the interferer's knowledge of the relationship or expectancy; [iii.] intentional interference inducing or causing a breach or termination of the relationship or expectancy; and [iv.] resultant damage to the party whose relationship or expectancy has been disrupted." *Miller v. Hehlen*, 104 P.3d 193, 202 ¶ 32 (Ct. App. 2005) (citations and internal quotation marks omitted). Plus, a plaintiff must allege a fifth element: that the interference was "improper." *Id.*; *accord Safeway Ins. Co. v. Guerrero*, 106 P.3d 1020, 1025 ¶ 14 (Ariz. 2005). Accordingly, Plaintiffs cannot state a claim without alleging plausible facts showing that WMAR knew about a specific listing contract and improperly and intentionally caused a breach or termination of that listing contract. *See id.*; *see also, e.g.*, *Dent v. Lotto Sport Italia S.p.A.*, No. 17-651, 2018 WL 11318189, at *4 (D. Ariz. Feb. 12, 2018) (dismissing claim that "fail[ed] to allege any facts suggesting Defendant knew of Plaintiff's contractual relationship with GoDaddy"); *Best v. Mosely*, No. 10-0700, 2011 WL 4857770, at *3 (Ariz. Ct. App. Oct. 13, 2011) ("[B]ecause Best fails to allege that a contract was actually breached as a result of Mosley's alleged interference, he has failed to plead a claim for tortious interference … .").

Here, the SAC includes 90 counts for tortious interference with contract based upon

---

[12] Plaintiffs' 90 Tortious Interference Counts are labeled in the SAC as "Counts 433–480," "Counts 567–609," and "Count 613."


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1 five categories of alleged conduct:  i) the deletion of contact information, ii) the deletion of

2 financial interest, iii) lockbox access, iv) "threat[s] to fine Plaintiffs due to listing[s] … being

3 on Facebook and not yet in MLS," and improperly subjecting Plaintiffs to a grievance

4 process (collectively, "Tortious Interference Counts"). *See generally* SAC. Yet, none of

5 Plaintiffs' Tortious Interference Counts allege well-pleaded facts to state a claim.

6 Instead, Plaintiffs merely parrot the elements set forth above. For example, Plaintiffs

7 plead no facts demonstrating that Plaintiffs had "a valid contractual relationship . . . or

8 business expectancy," but merely recite the required element that "there existed a valid

9 contractual relationship between the Plaintiffs and their client for [a certain] listing [number]

10 and/or a business expectancy." SAC ¶ 70. Similarly, Plaintiffs plead no facts demonstrating

11 that WMAR knew of any contract that was allegedly interfered with, but make conclusory

12 allegations that "[t]he Defendants"—not WMAR, specifically—"had knowledge of [a]

13 relationship and/or business expectancy." *Id.* There is not a single fact alleged showing how

14 WMAR could have known, much less actually knew, about  the contractual relationships

15 between the Plaintiffs and their unidentified clients for particular listings. SAC ¶ 59. Nor

16 does the FAC allege that any specific contracts were breached or "terminated . . . due to the

17 actions" of WMAR. *Gorney v. Arizona Bd. of Regents*, No. 13-23, 2013 WL 5348304, at

18 *10 (D. Ariz. Sept. 24, 2013). A "[t]hreadbare recital[] of the elements of a cause of action,"

19 as has been done here, "do[es] not suffice" to state a claim. *Iqbal*, 556 U.S. at 678; *accord*

20 *Twombly,* 550 U.S. at 555; *see, e.g.*, *Kerr v. First Franklin, Nat'l Ass'n*, No. CV-12-08065-

21 PCT-JAT, 2012 U.S. Dist. LEXIS 119437, at *9 (D. Ariz. Aug. 22, 2012) (dismissing claim

22 that "appears to simply parrot the elements").

23 Finally, Plaintiffs have not, and cannot, allege any resultant damage to the party

24 whose relationship or expectancy allegedly has been disrupted, because the only damages

25 Plaintiffs allege are the loss of "potential buyers," the loss of potential income, and a

26 potential "risk" to their brokerage license, which are speculative and do not allege injury or

27 harm. *Clapper*, 568 U.S. at 401 (finding that injury that "rests on a speculative chain of

28 possibilities that does not establish that their potential injury is certainly impending" does

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    not constitute injury-in-fact).

2           These omissions require dismissal of Plaintiffs' Tortious Interference Claims.

3    **IV.     THE SAC VIOLATES FEDERAL RULES OF CIVIL PROCEDURE 8 AND 10(b)**

4           Despite being much shorter than the FAC, at 26 pages, the SAC fails to comply with

5    Rules 8(a) and 10(b), as it contains 613 counts set forth in blocks of claims, buries allegations

6    in voluminous paragraphs and footnotes, and relies on group pleading of "Defendants,"

7    making it impossible for WMAR (or any Defendant) to admit or deny Plaintiffs' allegations.

8    *See, e.g.*, SAC ¶ 39 (alleging 109 breach of contract claims); ¶ 43 (alleging 83 antitrust

9    claims); ¶ 46 (alleging 48 negligence claims); ¶ 50 (alleging 48 tortious interference claims).

10   Indeed, of those 613 claims, only *six*—less than 1%—refer to a discrete claim; ¶ 5 n. 1

11   (single spaced footnote comprising 75% of a page); ¶ 41 n. 5 (footnote consisting of five

12   additional paragraphs of allegations). *See id.* at ¶¶ 1–2, 610–13. Dismissal is proper as this

13   is a blatant violation of Federal Rule of Civil Procedure 8(a)'s requirement of "a short and

14   plain statement of the claim showing that the pleader is entitled to relief" and   10(b)'s

15   requirement that "[a] party must state its claims or defenses in numbered paragraphs, each

16   limited as far as practicable to a single set of circumstances." *See, e.g.*, *Stone v. Baum*, 409

17   F. Supp. 2d 1164, 1173, n.3 (D. Ariz. 2005) ("While there is some leeway, Rule 10 must be

18   complied with as far as practicable" and noting "the contents of the numbered paragraphs in

19   the Complaint fail to be statements of a single set of circumstances and each claim founded

20   upon a separate transaction or occurrence is not stated in a separate count"); *Schayes v. BAC*

21   *Home Loans Servicing, LP*, 2011 U.S. Dist. LEXIS 79732, *8, 2011 WL 2746322 (D. Ariz.

22   Jul. 15, 2011) (same); *c.f. Harris v. Ariz.*, 2022 U.S. Dist. LEXIS 1986, *4, 2022 WL 195656

23   (D. Ariz. Jan. 4, 2022) (recommending dismissal for failure to adhere to Rule 10(b)).

24   **V.     WMAR IS ENTITLED TO A FEES AWARD PER A.R.S. § 12-341.01(A)**

25          A.R.S. § 12-341.01(A) provides that "[i]n any contested action arising out of a

26   contract, express or implied, the court may award the successful party reasonable attorney

27   fees." Here, Plaintiffs asserted claims for breach of contract and seek their fees. *See* SAC at

28   Counts 1–301, 481–523, 610, and p. 25. Thus, upon dismissal of Plaintiffs' Breach of

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    Contract Claims, WMAR, as the successful party, is entitled to its attorneys' fees.[13]

2    **VI.    CONCLUSION**

3           The Court rightfully dismissed Plaintiffs' 1,295 page FAC for "blatantly violat[ing]

4    Rule 8" and "altogether fail[ing] to give Defendants fair notice of Plaintiffs' claims." (Dkt.

5    51 at 3.) Noting that the FAC "is largely devoid of facts," the Court ***warning that "Plaintiffs***

6    ***risk sanctions if the [SAC] is legally frivolous or factually misleading*.**" (*Id.* at 5 (emphasis

7    added).) Undeterred, Plaintiffs filed the SAC. But as shown above, the SAC is simply a

8    condensed version of the FAC, and demonstrates that the complaint's deficiencies cannot be

9    cured by amendment. Thus, allowing Plaintiffs to amend the complaint for a ***fourth time***

10   would be a fruitless endeavor and should not be granted. *Leadsinger, Inc. v. BMG Music*

11   *Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (denying leave to amend because of "repeated

12   failure to cure deficiencies"); *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049,

13   1072 (9th Cir. 2008) ("[T]he district court's discretion to deny leave to amend is particularly

14   broad where plaintiff has previously amended the complaint."); *Seyed Mohsen Sharifi*

15   *Takieh v. Banner Health*, 515 F. Supp. 3d 1026, 1050 (D. Ariz. 2021) (amendment is futile

16   where no amendment will cure the deficiencies). For these and the foregoing reasons,

17   Defendant respectfully requests the Court dismiss Plaintiffs' SAC in its entirety with

18   prejudice.

19           RESPECTFULLY SUBMITTED this 3rd day of July, 2022.

20                                              **LEWIS BRISBOIS BISGAARD & SMITH LLP**

21

22           By _____

23                   Sean P. Healy
                     Kathryn Honecker
24                   Phoenix Plaza Tower II
                     2929 North Central Avenue, Suite 1700
25                   Phoenix, Arizona 85012-2761

26   _____

27   [13] If the Court awards WMAR its attorneys' fees under A.R.S. § 12-341.01, WMAR will file
     a separate motion for attorneys' fees consistent with the factors required under *Associated*
28   *Indem. Corp. v. Warner*, 694 P.2d 1181, 1184 (1985).


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1
2          Todd R. Seelman
3          (*pro hac vice forthcoming*)
           1700 Lincoln Street, Suite 4000
4          Denver, Colorado 80203
           *Attorneys for Defendant*
5          *White Mountain Association of Realtors*
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

### CERTIFICATE OF COMPLIANCE WITH LRCIV 12.1.

2

Pursuant to Local Rule 12.1, undersigned counsel hereby certifies that on August 2,

3  2022, prior to filing this Motion, she called Plaintiffs' counsel to notify Plaintiffs of the

4  issues asserted in the Motion and left a message with his receptionist. Undersigned counsel

5  followed up later that same day with an email message notifying Plaintiff's counsel of the

6  issues asserted in the above Motion to Dismiss and advising of Defense counsel's open

7  availability for a telephone conference to discuss any of the issues prior to filing. Defense

8  counsel responded via email on August 3, 2022, that he would respond the following week.

9  As such, the parties were unable to agree that the pleading was curable in any part by a

10  permissible amendment.

11

12
                               **LEWIS BRISBOIS BISGAARD & SMITH LLP**

13

14
         By                                       
                   Kathryn Honecker

15
                   Phoenix Plaza Tower II

16
                   2929 North Central Avenue, Suite 1700
                   Phoenix, Arizona 85012-2761

17

18
                   *Attorneys for Defendant*
                   *White Mountain Association of Realtors*

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**CERTIFICATE OF SERVICE**

I certify that on the 3rd day of August, 2022, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants of record in this matter.

Eduardo H. Coronado, Esq.
CORONADO LAW FIRM, P.L.L.C.
4700 West White Mountain Boulevard
Lakeside, Arizona 85929
eduardocoronado@frontier.com

*Counsel for Plaintiffs*

Douglas C. Northup, Esq.
FENNEMORE CRAIG, P.C.
2394 E. Camelback Rd., Suite 600
Phoenix, AZ 85016
dnorthup@fclaw.com

Ethan Glass, Esq. (*admitted pro hac vice*)
Michael D. Bonanno, Esq. (*admitted pro hac vice* )
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street, Suite 900
Washington, D.C. 20005
ethanglass@quinnemanuel.com
mikebonanno@quinnemanuel.com

*Attorneys for Defendant National
Association of REALTORS®*

Scott A. Malm, Esq.
GUST ROSENFELD, P.L.C.
1 East Washington Street, Suite 1600
Phoenix, Arizona  85004
samalm@gustlaw.com

*Attorneys for Defendant Arizona
Association of Realtors®*

*/s/  DC Hatheway*

4891-1424-7981.2